1

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

THE HON. ANN L. AIKEN, JUDGE PRESIDING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Government, | ) | |
| | ) | |
| v. | ) | No. 11-cr-60131-AA |
| | ) | |
| RONALD D. JOLING and DOROTHEA J. | ) | |
| JOLING, | ) | |
| | ) | |
| Defendants. | ) | |

_____

REPORTER'S TRANSCRIPT OF PROCEEDINGS

EUGENE, OREGON

TUESDAY, MARCH 19, 2013

PAGES 1 - 25

Kristi L. Anderson
Official Federal Reporter
United States Courthouse
405 East Eighth Avenue
Eugene, Oregon 97401
(541) 431-4112
Kristi_Anderson@ord.uscourts.gov

```
 1    APPEARANCES OF COUNSEL:

 2

 3    FOR THE GOVERNMENT:

 4    Scott E. Bradford
      United States Attorney's Office
 5    405 E. Eighth Avenue
      Suite 2400
 6    Eugene, OR 97401
      (541) 465-6741
 7    Fax: (541) 465-6314
      Email: scott.bradford@usdoj.gov

 8

 9    FOR THE DEFENDANT RONALD D. JOLING:

10    Mark Bennett Weintraub
      Office of the Federal Public Defender
11    859 Willamette Street
      Suite 200
12    Eugene, OR 97401
      (541) 465-6937
13    Fax: (541) 465-6975
      Email: mark_weintraub@fd.org

14

15    FOR THE DEFENDANT DOROTHEA J. JOLING:

16    Emilio F. Bandiero
      Law Office of Emilio F. Bandiero, PC
17    975 Oak Street
      Suite 625
18    Eugene, OR 97401
      (541) 344-1637
19    Fax: (541) 344-2956
      Email: efband@aol.com

20

21

22

23

24

25
```

```
 1                      PROCEEDINGS

 2              TUESDAY, MARCH 19, 2013

 3           THE CLERK:  This is the time set for oral argument

 4   in the case of United States of America versus Ronald

 5   Joling, Case No. 11-60131 and USA versus Dorothea Joling,

 6   Case No. 11-60131.

 7           MR. WEINTRAUB:  Good morning, Your Honor.  I

 8   wonder if I could give the court a little background as to

 9   why we are here this morning.

10           THE COURT:  That would be great.

11           MR. WEINTRAUB:  This case has been pending for a

12   long time.  I think it's fair to say that the defendants

13   have never happily accepted representation by counsel.

14           Without getting into the principles that they may

15   hold that are behind that, we have struggled throughout the

16   course of this case with attempting to represent them when

17   they seem to reject the legitimacy of our representation and

18   the system that it's a part of.

19           We were before Judge Coffin and then Judge Hogan

20   about a year ago with a motion to withdraw and then a

21   Faretta hearing at which the defendants asserted a wish to

22   represent -- or to defend themselves and not be represented

23   by counsel.

24           Initially Judge Coffin referred that to Judge

25   Hogan.  At the first hearing before Judge Hogan, Judge Hogan
```

1    asked us to prepare a written declaration for the defendants

2    to sign in support of their request to defend themselves.  I

3    prepared that document, but the defendants did not sign it.

4            I can provide the court with a copy of that if it

5    will be helpful today.

6            THE COURT:  Sure.  That would be fine.

7            MR. WEINTRAUB:  We were then before Judge Hogan

8    for a follow-up hearing.  I believe Mr. Bradford provided

9    the court with a transcript of that hearing.  That was the

10   second of two hearings before Judge Hogan on that issue.

11           At the conclusion of that hearing, Judge Hogan

12   found that the defendants had not unequivocally expressed a

13   wish to waive their Sixth Amendment right to counsel and

14   represent themselves, and based on that he denied their

15   request.

16           I told Judge Hogan at that time that I didn't

17   intend to renew the request every time I received another

18   piece of -- another communication from my client purporting

19   to fire me or believing that I had been fired.

20           And so the matter has then gone on for about

21   another year in that posture.

22           But the situation for a very long time has been

23   that my client does not speak with me and returns all

24   correspondence that I send to him.  The correspondence I

25   receive from him pretty consistently represents that he

1    believes that I have been fired; that he wants me fired;

2    that he does not believe I am representing him any further.

3         So it came to a point where I thought we probably

4    should be before the court again to revisit the subject.  I

5    think that Mr. Bandiero's situation is largely the same, but

6    I will let him speak for himself.

7         MR. BANDIERO:  Thank you, Your Honor.  I represent

8    Mrs. Joling.

9         The situation is the same with a slight little

10   twist, and that is that the document that Mr. Weintraub

11   prepared at the direction of Judge Hogan, I modified that

12   slightly to indicate -- to have her indicate that she was

13   solely and wholly in charge of her decisions.  Wasn't my

14   decision.  It was not Mr. Joling's decision.

15        I, as well, have -- my client does not speak with

16   me.  I regularly get fired in various forms by letters or

17   declarations or motions, and all of my correspondence is

18   returned with some rubber stamp rejection of -- essentially

19   of my representation.

20        So we are in a very difficult situation, and

21   Mrs. Joling as well as Mr. Joling have expressed repeatedly

22   a desire to represent themselves.  However, I think that

23   they did not engage fully with Judge Hogan when he held the

24   previous *Faretta* hearing, and on that basis he continued our

25   representation.  It was -- and without getting into details,

1    I -- Mrs. Joling knows that if she wants to represent

2    herself, she must say particular things to the court in

3    order to have that happen.

4          With that, I am -- I have concluded my remarks,

5    and whatever the court wants to do next is certainly in

6    order.

7          THE COURT:  Both lawyers on each of your behalf

8    have stated where they think this issue is, so I am happy to

9    hear anything either one of you wish to tell me.

10          DEFENDANT RONALD JOLING:  Thank you.

11   Notwithstanding, the facts that they say are basically

12   correct except with a difference of opinion.  I do not

13   challenge their abilities or skills.  As a Christian, I

14   can't have ungodly representation, as the scripture clears,

15   and they have made that clear to me.

16          But notwithstanding all those facts, we are really

17   here today to end controversy, and so I will conditionally

18   accept even the appointment of the attorneys, if that's your

19   desire, and whatever may else be said on proof of the claim

20   and on condition that a private administrative remedy that

21   is in place and settled has not constituted closure and

22   settlement of all this case, and I would move then to

23   dismiss.  We want -- we do not want controversy any longer,

24   and so that's where I am at today.

25          THE COURT:  Ms. Joling.

1          DEFENDANT DOROTHEA JOLING:  I also understand the

2    court's concern for my representation.  And I also

3    conditionally accept the court's appointment -- appointed

4    counsel on proof of claim and upon condition that my private

5    administrative settlement does not constitute closure and

6    settlement of this case, and therefore there will be no need

7    of counsel upon completion of settlement.  And I wish to

8    have this case dismissed on those bases.

9          THE COURT:  Mr. Bradford.

10         MR. BRADFORD:  Your Honor, I am trying to

11   interpret what the defendants just said.

12         THE COURT:  Well, they made a motion to dismiss.

13   Are you prepared to dismiss?

14         MR. BRADFORD:  I am not prepared to dismiss.

15         THE COURT:  Motion is denied.

16         So we are proceeding on the matter that's before

17   this court.

18         And you have indicated that you are taking -- you

19   are conditionally accepting representation from the lawyers.

20         This is a criminal charge filed in this court.  We

21   are following the Constitutional process under which these

22   charges are brought in the -- under the rule of law.  With

23   the condition -- with the exception of motions that you just

24   made on your own, your lawyers represent you.  They are

25   skilled in this process.  They are skilled in the rules of

1    law.  They are skilled in the fact that the government has

2    brought the charge against each of you, and we'll proceed.

3            It is important that you understand the peril of

4    going forward on your own.  It is a complicated,

5    rule-driven, constitutional-driven proceeding all the way

6    through.  Many people have come here and said they will do

7    it on their own, and we take that very seriously.  People

8    have the right to represent themselves, and we over and over

9    and over and over again walk through the perils of that.

10           I would have to say on rare occasions people go

11    forward on their own because the risks are substantial.  It

12    would appear to me that in this particular instance, you are

13    being given the opportunity for two experienced, skilled

14    advocates who understand this process, understand the

15    charges, and will defend you with zeal and honesty.  They

16    will also tell you where those risks are.  That's what their

17    job happens to be.

18           And more often than not, when we are in this

19    position we find people who are unable to hear the message

20    and take it out on the messenger.  The message today is this

21    matter is filed in this court.  I have not had a motion

22    before this court that questions adequately jurisdiction on

23    these claims.  I appreciate the approach you have taken thus

24    far.  That the record -- I have a record of understanding

25    and appreciating those motions.  I have made my ruling on

1  that issue.  You can ask your lawyers to bring others.  But
2  this case will move forward.

3         And it is your -- in your best interest to
4  cooperate fully with the lawyers to either allow them the
5  opportunity to be ready for trial and/or be in a position
6  where they can assist in a resolution, a negotiated
7  resolution of this particular case short of that.

8         But those are -- that's the process.  That's the
9  process.

10         So what -- what are the outstanding dates at this
11  point?

12         MR. BRADFORD:  Your Honor, we have a May 15th
13  trial date, which is a Wednesday.  That's the next date.

14         MR. WEINTRAUB:  There is a status conference set
15  before Judge Hogan on April 15th.

16         THE COURT:  I don't think --

17         MR. BANDIERO:  Judge Coffin.

18         MR. WEINTRAUB:  Or -- excuse me -- Judge Coffin on
19  April 15th.

20         MR. BRADFORD:  At this stage --

21         MR. BANDIERO:  Your Honor, I --

22         MR. BRADFORD:  Go ahead.

23         MR. BANDIERO:  After you finish with the
24  scheduling, I just have --

25         MR. BRADFORD:  Go ahead, Mr. Bandiero.

1      MR. BANDIERO:  Well, I think we need some more

2  clarity on I accept conditionally the representation.  I am

3  not sure what conditionally means to Mrs. Joling.

4      So I would request that the court perhaps try to

5  clarify that issue.

6      THE COURT:  That's a good question.  But I gave --

7  that's why I am asking for what schedule -- what schedule

8  might be -- what I need to know with regard to scheduling.

9      MR. BRADFORD:  Your Honor, regarding the trial

10  date, typically we -- I am unclear as to why that was set

11  for a Wednesday, but if we were to hold that week as our

12  trial date, I would respectfully request that the court

13  start the trial on Tuesday of that week.  That would give us

14  more time to possibly complete the trial by that Friday.

15      THE COURT:  Well, we'll have to be because I leave

16  the country that Saturday.

17      MR. BRADFORD:  Even better.  Thank you.

18      MR. WEINTRAUB:  I don't think we will be prepared

19  for trial by that date in any event.

20      THE COURT:  That was actually my expectation.

21      MR. WEINTRAUB:  Given the volume of discovery and

22  the lack of communication with the client, there is a great

23  deal more to do before we would be prepared for trial.  But

24  I thought we could take that up with Judge Coffin as opposed

25  to Judge Hogan on April 15th.

1           MR. BANDIERO:  And for my part, Your Honor, it is

2      very difficult to prepare a case when you get fired on a

3      weekly basis and you really don't know whether you should

4      continue slogging through all of the information that's

5      there.  And it's -- I can tell you that there's a lot.

6           So I agree with Mr. Weintraub that I think that

7      it's unrealistic to keep this trial date.

8           MR. WEINTRAUB:  And to be frank, because of

9      ongoing budgetary issues, and I know the court's well aware

10     of them, we have -- we have held back somewhat in devoting

11     resources to this case because it was unclear whether we

12     would really be staying on the case.

13          At this point it is my intention not to move to

14     withdraw further unless there is what appears to be a

15     significant change in circumstances that would warrant that.

16     And that is notwithstanding any future communications I get

17     from Mr. Joling about whether or not I am or should be

18     representing him.

19          THE COURT:  Um-hmm.  Um-hmm.

20          MR. WEINTRAUB:  So we'll devote the resources we

21     need to --

22          THE COURT:  Um-hmm.

23          MR. WEINTRAUB:  -- and prepare to defend the case,

24     but we would not be ready by May.

25          THE COURT:  Go ahead.  You have something to say?

1          DEFENDANT RONALD JOLING:  Yes.  Notwithstanding

2     everything, as I said earlier, and we have previously

3     challenged jurisdiction.  This has not been proved on the

4     record.  We could go through a long dissertation of the

5     things that I have asked to be done that haven't been done.

6          But in regards to the Department of Justice and

7     yourself, and thank you for the time to speak, I -- and the

8     motion to dismiss and your certain sincere interest, I

9     believe, in our defense and a proper defense and the dates

10    for trials and so forth, notwithstanding all that, I still

11    conditionally accept all of that on proof of claim and on

12    condition that my private administrative settlement that is

13    in place does not constitute a closure and settlement of all

14    charges --

15          THE COURT:  I have no idea what that means.

16    What's your private -- what is that?

17          THE DEFENDANT:  It's under the administrative acts

18    that have already -- I believe everyone should have had a

19    copy of it.  It's been already sent to everyone.

20          THE COURT:  What does that mean?

21          THE DEFENDANT:  It's a private settlement outside

22    the realm of the court in which I am getting the prosecutor

23    and those who believe they have various charges to settle

24    outside the court.  And within -- when that is completed, it

25    would certainly be not necessary to have all the other

1   things that were --

2          THE COURT:  Let me just ask a question.  There --

3   as we know, there are two different aspects of the IRS

4   office, one that deals with the collection matter and one

5   that deals with the criminal matters, right?  I mean, to

6   just be roughly stated.

7          MR. BRADFORD:  Yes, Your Honor.

8          THE COURT:  And try as I might to come up with

9   global settlements in those two arenas, generally it's very

10  difficult to have a meeting of the minds of those two; is

11  that correct?

12         MR. BRADFORD:  Correct.  Typically there is no

13  global settlement in those types of cases.

14         THE COURT:  So just as a hypothetical, for

15  example, if Mr. Joling had submitted, let's say, back taxes

16  due and owing for whatever period of time was claimed in the

17  criminal case of just say a $100,000, which happens to be

18  the number, perhaps, that he owes, how would that impact the

19  criminal case?

20         MR. BRADFORD:  Typically a payment of taxes, once

21  we have gotten to this stage where criminal conduct has

22  occurred, will not settle the criminal case.  It would be,

23  for example, applied to restitution or something like that

24  later on down the road, but it would not settle the criminal

25  conduct at issue.

1          THE COURT:  But it could impact how that's

2     resolved?

3          MR. BRADFORD:  Potentially, yes, Your Honor.  And

4     I would simply note for the record that the information that

5     Mr. Joling is discussing have been provided to defense

6     counsel and to the IRS, and it's most appropriately

7     described as frivolous tax protester information, which is

8     very difficult to understand and determine what the intent

9     of the defendant actually was in this case.

10          THE COURT:  Can you be more specific?

11          MR. BRADFORD:  The best way to do would be to

12     provide it to the court for the court to review, but it's

13     lots of paperwork that talks about secret accounts with the

14     treasury, the U.C.C., bogus bonds, bogus 1099 schemes and

15     those types of arguments to settle their tax debt.

16          THE COURT:  Okay.  So Mr. Joling, here's what I

17     would tell you:

18          The government has the charges before this court,

19     the criminal charges.

20          DEFENDANT RONALD JOLING:  Go ahead.

21          THE COURT:  And you have provided information to

22     them that does not satisfy the answer to those criminal

23     elements and charges.  By -- my example that I gave you was

24     a hopeful one that perhaps you were taking that tack that it

25     was a, oh, I did not realize that I owed X amount of money

1    and I will tender that amount of money and see if that will

2    have an impact on the criminal case.

3              It appears that what you have filed are

4    complicated documents that don't lead to the conclusion that

5    there's a basis for a defense in this particular case.

6    That's just my rough reading of what you have stated.

7              So we proceed on the criminal case.  And I am

8    going to suggest that you work hand in glove with your

9    lawyer to be prepared to answer these criminal charges

10   because they are serious.  They are -- you are not the first

11   person in the world to be charged and attempt to bring

12   before the court these defenses.  To the best of my

13   knowledge, no one has been successful in the raising of the

14   issues that you are raising, and that's gone beyond this

15   court to make that determination.

16             So I am obligated to go forward.  And what I will

17   tell you is you are going to want a vigorous defense, and

18   you are going to want to arm your lawyers with adequate

19   information.  The more you make it difficult and withhold

20   that information or struggle with that, the more likely it

21   is you are going to come into court ill-equipped to really

22   respond to the government's evidence.  And if you want your

23   lawyers to be in a position to be able to adequately

24   respond, they need to be prepared and you need to cooperate.

25             DEFENDANT RONALD JOLING:  Again, I appreciate -- I

1    sincerely feel, especially your early morning words to the
2    gentleman that was here, I feel your sincerity.  I believe
3    that.  You don't want to see a 70-year-old man and woman
4    married 50 years sent to jail.  But 30 years of study and
5    research, I still feel that I -- and I would even testify
6    before the Lord under oath to the living God, I am innocent
7    of all charges.  We are innocent of all charges.  We don't
8    want to, though, go to controversy and argue.  The Lord says
9    agree with your enemy in the way.  The documents that
10   Mr. Bradford was referring to are not the documents that
11   have been recently submitted.
12            THE COURT:  Well, then you will have time to talk
13   it over with your lawyers and discuss that.
14            But here's what I need to tell you:  We are a rule
15   of law country.  And have you -- if you say you are 70 years
16   old, have you had any military service?
17            DEFENDANT RONALD JOLING:  No.
18            THE COURT:  Have you -- did your kids go to
19   school?
20            DEFENDANT RONALD JOLING:  Christian school.
21            THE COURT:  Do you have kids?
22            THE DEFENDANT:  Sure.
23            THE COURT:  Went to school?
24            DEFENDANT RONALD JOLING:  In the Christian school,
25   private school.

1          THE COURT:  Private school.

2          Do you drive on the roads?

3          THE DEFENDANT:  Yes, I do.  I don't drive.  I

4   travel on the road, but difference in law and --

5          THE COURT:  You know, we are -- we -- you have the

6   privilege of being part of a Democracy that is governed by a

7   constitution that sets out how we will govern as a people.

8   It's the rule of law.  And everybody has the protection of

9   the First Amendment to worship how they wish to worship, but

10  we all have our obligations and our responsibilities under

11  rule of law and the choice of living here, and those

12  obligations are taken seriously.  This court takes those

13  obligations seriously.

14          And I am suggesting to you that I take no pleasure

15  in sending people to jail for any crime, but when they break

16  the law and they are held accountable because they have

17  violated the law, that's what happens.

18          So I am prepared to execute my oath in a way that

19  provides a fair trial for both the defense and the

20  government and to present this to your peers who will sit as

21  jurors, and they will make their determination.  But they

22  will be given legal instruction about what the elements are

23  of the crimes, and those elements, if proven, by a jury of

24  your peers you may be found guilty.

25          I would suggest that if you want to mount an

1    adequate and appropriate defense, this is the time to work

2    with your lawyers.

3            DEFENDANT RONALD JOLING:  I appreciate everything

4    you have said.  And I believe in the rule of law.  Lived it

5    myself.  The law comes from scriptures, Public Law 97-280,

6    and for you I believe it's House Joint Resolution 104.

7            However, with all due respect, please, I am not

8    being argumentative, all respect, I conditionally accept

9    whatever you feel is best in this case on the condition and

10   proof of claim and the condition that this remedy, my

11   private administrative remedy, which is permissible under

12   the law under Title 28, Section 11, does not constitute

13   closure and settlement of the case in a fair and equitable

14   way which brings no damage to any party.

15           And so thank you very much.  I appreciate your

16   deep concern.  I really do.

17           THE COURT:  Gentlemen, you are still, as far as I

18   am concerned -- go ahead, Mr. Bandiero.

19           MR. BANDIERO:  Thank you, Your Honor.  I don't

20   want to belabor all of this and extend this hearing, but I

21   think that we have heard from Mr. Joling, Mr. Weintraub's

22   client, about conditional representation and acceptance, and

23   the private remedies.

24           I think that Mr. Joling alluded to the fact that

25   he asked to have things done, and I don't know what the

1   correspondence between Mr. Joling and Mr. Weintraub have

2   been, but I do know that I get essentially the same

3   documents from Mrs. Joling because both names are on them.

4   And the assertion that I have been asked to do things and

5   have not done them is problematic in this way:

6           Without going into the details, and it's very

7   difficult to kind of dance around all of those things, I

8   cannot either file motions or assert positions that are

9   frivolous, and I refuse to do so.  I am not essentially

10  saying that they are frivolous, but in my opinion, I cannot

11  file and I cannot follow the instructions given to me by my

12  client.  That's the first part of it.

13          The second is I am not sure that we have had any

14  clarity on conditional representation from Mrs. Joling.

15          DEFENDANT DOROTHEA JOLING:  Upon the court's

16  advice, I conditionally accept the recommendation that he be

17  retained as my attorney until the completion of my private

18  administrative settlement is finished.

19          THE COURT:  Are you going to talk to your lawyer?

20          DEFENDANT DOROTHEA JOLING:  Yes.

21          THE COURT:  Um-hmm.

22          THE DEFENDANT:  Upon condition.

23          THE COURT:  What are those conditions?

24          MR. BANDIERO:  Stand to address Judge Aiken so

25  that we can all hear you.  Thank you.

1              DEFENDANT DOROTHEA JOLING:  Until my

2      private administrative settlement is completed, I will be

3      conversing with Mr. Bandiero.

4              MR. BRADFORD:  Your Honor, perhaps I can settle

5      the issue.  The private settlement has been rejected by the

6      government and we'll proceed.  We are happy to engage in

7      settlement discussions with the defendants and their

8      attorneys and whatever else the court would like us to do as

9      far as a settlement goes, but their private action has been

10     rejected by the government.

11             THE COURT:  So that's where we stand.  Motion to

12     dismiss was denied.  The government has rejected that

13     conditional settlement.  We are proceeding on the elements.

14             I am going to suggest to you that you cooperate

15     fully with your lawyers and provide the information to

16     provide an adequate and an appropriate defense in this case.

17             And I am just going to err on the side of maybe

18     overstating something.  I recently tried one of these cases

19     to a jury verdict.  And let's just say it was a fairly

20     dominant husband in the situation who directed how things

21     were going to be done.  And the wife took the position that

22     she just followed what her husband told her.  Nonetheless,

23     they were both convicted, and they both were sentenced.

24             You are separate and apart individuals before this

25     court.  And you are each entitled to your own approach and

1   defense.  You have independent counsel.

2          You won't be housed together if you go to jail.  I

3   am going to suggest that you each have different approaches

4   in this case, I suspect, and different opportunities to work

5   with your lawyers, and you should take advantage of those

6   because it won't matter at sentencing, if you get that far,

7   if you are convicted, when all of a sudden there's a change

8   of heart, as I had in my last case by the wife that she had

9   no idea and she was just doing what her husband told her to

10  do.

11         I am going to get ahead of that and say to you, I

12  would understand right now that you have your own separate

13  defense and your own separate issues and your own separate

14  defense counsel, and you should take advantage of that.

15         I am not trying to divide either of you between

16  the vow of marriage, but I am just going to suggest that you

17  are going to be taken care of in respect to the law as

18  separate individuals.

19         Anything else?

20         MR. BRADFORD:  I just want to be clear here, Your

21  Honor, because *Faretta* is one of those touchy issues when it

22  goes up on appeal, and it's based on a record.

23         Is it possible to ask the defendants directly, yes

24  or no, are they going to accept appointed counsel just

25  because of the waiver and the conditional acceptance just to

1    ensure that that's clear on the record?

2              MR. WEINTRAUB:  I don't think, if I may, that we

3    are going to get a clear answer on that, but my

4    understanding of the law is that unless they affirmatively

5    waive their Sixth Amendment right to counsel, then they will

6    continue to be represented by counsel --

7              THE COURT:  Correct.

8              MR. WEINTRAUB:  -- that is appointed by the court.

9              THE COURT:  Correct.

10             MR. WEINTRAUB:  And that's the record that we have

11   right now.

12             THE COURT:  That's right.  That's my understanding

13   of the record.  I have had to make these before.

14             Anything else, Mr. Bandiero?  I -- you know, see,

15   here's the deal:

16             Both these lawyers are busy, have lots of

17   different clients, do excellent work, and they get stressed

18   if the clients are not cooperating and they are in a

19   position to do their very best work on your behalf.  So I

20   would suggest to you that you cooperate fully with people

21   who understand the nature of these claims before the court,

22   these criminal charges, and can adequately defend you and to

23   look out for your interests and perhaps even resolve them

24   short of a trial.

25             MR. WEINTRAUB:  Our office will represent

1    Mr. Joling as well as we can under whatever the

2    circumstances are.

3            MR. BANDIERO:  And on behalf of Ms. Joling, I want

4    to represent to the court and Mrs. Joling that I will do the

5    same.

6            I am not sure if I heard Mr. Bradford --

7    Mr. Bradford correctly, but I think he might have said that

8    a settlement, a noncriminal settlement is not available

9    anymore.  That's -- you rejected that.  But I think I heard

10   him say that he would be available for a settlement

11   conference or anything else that the court directed.

12           So my question to the court is do you think --

13   does the court and Mr. Bradford, Mr. Weintraub and of course

14   Mrs. Joling, would they want to engage in such an effort?

15           THE COURT:  Well, first of all, I think we

16   outlined that there's the civil side of the IRS and the

17   criminal side of the IRS, and we have had -- try as I might,

18   I have had a very difficult time trying to globally resolve

19   those two issues, although we have been able to do some

20   things sequentially, number one.

21           So he's ruled out because he has no authority to

22   resolve the civil side.

23           MR. BANDIERO:  Yes, I understand.

24           THE COURT:  I think the door is completely open to

25   have a conversation about resolving these three criminal

1  charges that are -- have been brought against the respective

2  defendants.

3          And you will have Judge Coffin at a status

4  conference, and you can certainly ask if he'd be willing to

5  engage in a negotiation because sometimes it's helpful to

6  have that third party.

7          I am not going to burden Judge Coffin with a

8  conference that might not go anywhere, so I think that's

9  something you should talk with your clients about because I

10 don't think it's a good use of his time to have your clients

11 go in and repeat over and over again the position they took.

12 They need to come to the table and be ready to address how

13 they are going to find their way out of these charges before

14 them short of a trial.  Okay?

15         MR. BANDIERO:  Very well.

16         THE COURT:  All right?  Thank you for your time

17 this morning.

18         MR. BRADFORD:  Thank you, Your Honor.

19         MR. BANDIERO:  Thank you, Your Honor.

20         MR. WEINTRAUB:  Thank you.

21         THE CLERK:  Court is in recess.

22         *(The proceedings were concluded this*

23         *19th day of March, 2013.)*

24

25

25

1          I hereby certify that the foregoing is a true and

2    correct transcript of the oral proceedings had in the

3    above-entitled matter, to the best of my skill and ability,

4    dated this 22nd day of March, 2013.

5

6    /s/Kristi L. Anderson

7    Kristi L. Anderson, Certified Realtime Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25