Mark Bennett Weintraub, OSB #83343
Assistant Federal Public Defender
859 Willamette Street, Suite 200
Eugene, Oregon  97401
(541) 465-6937 Telephone
(541) 465-6975 Facsimile
mark_weintraub@fd.org
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>RONALD D. JOLING,<br><br>                    Defendant | No. 6:11-CR-60131-AA<br><br>SENTENCING MEMORANDUM OF RONALD DEAN JOLING |

This Court should reject the sentencing recommendations set forth in the Presentence Report (PSR) and Government's Sentencing Memorandum.  For the reasons set forth below, a sentence of 121 months would violate the statutory mandate that the sentence imposed be sufficient but not greater than necessary to achieve the purposes of sentencing set forth in 18 USC § 3553(a).

As a preliminary matter, the government overstates the case that such a lengthy sentence will "ensure specific and general deterrence." Government's Sentencing Memorandum at 3.  No criminal sentence will "ensure" deterrence among Mr. Joling's fellow anti-government true

Page 1 SENTENCING MEMORANDUM OF RONALD JOLING

believers. It is unreasonable to believe that they are deterred or dissuaded by the federal government's exercise of its immense power. Mr. Joling will be seen as a martyr by those who think about him at all, but their anti-government beliefs and behavior are unlikely to change, especially in a time of increasing political polarization, when one major political party and a cable news network with millions of viewers continue to stoke anti-government opinion. The convictions of Mr. Joling's daughter and son-in-law and several of his fellow travelers, as illustrated during the defense case during trial, are one example of the uselessness of criminal prosecutions to achieve deterrence in this area. No sentence of any length is going to persuade them that the federal government or its tax laws are legitimate.

With respect to the idea of specific deterrence, Mr. Joling, if he survives his sentence at all, will be impecunious and have little or no income on which to pay taxes. The government, through the pending civil suit illustrated in the exhibits to the government's memo, is in the process of seizing every bit of the Jolings' property and will certainly be successful in doing so. It is through the exercise of that power, to seize property and garnish income in order to satisfy unpaid tax debts, that the government truly compels unwilling citizens to live up to their civic financial obligations.

Only about half of Americans believe that their taxes are fair, the lowest percentage since 2001 (s*ee* http://www.gallup.com/poll/161780/fewer-americans-view-income-taxes-fair.aspx), and it is not because of the relatively small number of so-called "tax defiers" such as Mr. Joling. It is because the majority of Americans believe that "the very rich don't pay their fair share." *See* Stiglitz, Joseph E., "A Tax System Stacked Against the 99 Percent," New York Times (April 14, 2013) (http://opinionator.blogs.nytimes.com/2013/04/14/a-tax-system-stacked-against-the-99-

Page 2 SENTENCING MEMORANDUM OF RONALD JOLING

percent/?_r=0 ). Nothing about the sentence imposed in Mr. Joling's case will change that perception.

Mr. Joling's position with respect to the Sentencing Guidelines calculation is the same as his position at trial. He asserts that he is not guilty of the charged offenses because he did not have criminal intent. Consistent with this position, he objects to the sentencing calculations set forth in the PSR in their entirety.

Mr. Joling objects specifically to the two-level enhancement for obstruction of justice set forth in Paragraphs 21 and 29 of the PSR. The alleged false liens that are the principal subject of the recommended enhancement are the subject of a separate criminal case, on which an indictment was returned on March 18, 2015. *United States v. Joling*, 6:15-cr-115-MC ("Indictment"). Mr. Joling's guilt or innocence in that matter has yet to be adjudicated. In addition, that case has been assigned to Judge McShane, presumably because this Court was an alleged target of the liens Mr. Joling is accused of wrongfully causing to be filed. Indictment at ¶ 11. For these reasons, it is respectfully submitted that this Court should abstain from any decision as to whether the length of Mr. Joling's anticipated incarceration should be increased as a result of the liens.

One of the factors set forth in 18 U.S.C. § 3553(a) is the avoidance "of unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Here, the sentence recommended by the government far exceeds the sentences imposed in the District of Oregon for defendants convicted of similar charges involving similar conduct. For example, in *United States v. Julison*, 3:11-cr-00378-SI, the defendant received a sentence of 48 months. That defendant espoused anti-government and anti-tax beliefs similar to Mr. Joling and, unlike Mr. Joling, had filed a false claim for a tax

Page 3 SENTENCING MEMORANDUM OF RONALD JOLING

refund and actually received a false refund of $411,773. The government argued in the Sentencing Memorandum in his case, "This is a case of outright theft, pure and simple. Defendant Miles Julison flat out stole $411,773 from the United States Treasury, tried to steal $1,542,844 more, and helped at least two others in attempting to steal another $560,000." Julison spoke at seminars encouraging others to engage in similar fraud; he refused to cooperate or even speak with his attorneys; filed multitudes of frivolous documents with the court and the IRS, and was eventually convicted after a jury trial. The government, in the Julison Sentencing Memorandum, sought a sentence of 51 months. It also pointed out a half dozen other cases, which it asserted involved similar conduct, in which the defendants received sentences ranging from 24-78 months. Two of those involved actual losses of over half a million dollars and intended losses of $1.5 million. Julison Sentencing Memorandum at 13 (attached as Exhibit 1).

Chester Davis, another defendant who had alleged ties with Mr. Joling, received a total sentence of 97 months. *United States v. Davis*, 3:12-cr-00109-SI. After a four-day jury trial at which the defendant refused to speak or cooperate with his defense lawyer, the government sought a sentence of 120 months. The defendant's conduct involved frivolous and harassing correspondence, checks drawn on closed bank accounts, "bills of exchange," warehouse banks including MyICIS, frivolous tax court filings, use of nominee bank accounts, and purchases of over $5 million in gold that he attempted to use to hide his wealth and tax liability from the IRS. The government argued at sentencing that the tax he owed exceeded the value of the gold he purchased and hid. Davis Sentencing Memorandum at 2-6 (Attached as Exhibit 2). A search warrant revealed that he also possessed "thirty-nine firearms, body armor, and tactical gear, along with sniper training materials, survival manuals, and anti-government literature. Agents also found documents suggesting that defendant planned to flee to Panama." *Id.* at 8. Davis's

Page 4 SENTENCING MEMORANDUM OF RONALD JOLING

sentencing guidelines calculations included a loss to the government exceeding $7 million, and enhancements for sophisticated means and obstruction of justice.

Mr. Joling's alleged conduct pales in comparison to Davis and is far more analogous to Julison and the other defendants, with whom the government compared Julison, who received an average sentence of approximately 42 months.

The Court should also take into account Mr. Joling's age and health. He is almost 72 years old. Even a sentence far less than the one sought by the government could easily be a life sentence. Incarceration of prisoners age fifty or over also costs the government an average of $68,270 a year (compared to $34,105 for the average prisoner), ironically adding to the losses the government accuses Mr. Joling of causing. *See* "At America's Expense: The Mass Incarceration of the Elderly" (ACLU June 2012) at vii.

Finally, it should be noted that the alleged loss and restitution amount is a classic case of the tail wagging the dog. Out of an alleged $1.1 million loss set forth in the PSR, the actual tax loss attributable to Mr. Joling is only $293,118. The rest includes alleged penalties and, primarily, interest, amounting to almost three quarters of the total. PSR ¶ 18.

As this Court has recently noted, recognition is growing in and out of the federal judiciary that this country has a dangerous addiction to mass incarceration. Adding Mr. Joling to the ranks of the 2.2 million incarcerated Americans will be noticed by few.  It will not help the government collect the taxes he owes, but it will add to the $80 billion per year that the country spends on imprisonment.  It is respectfully submitted that any societal benefit from doing so is marginal at best.

Respectfully submitted on April 22, 2015.


/s/ Mark Bennett Weintraub
Mark Bennett Weintraub
Assistant Federal Public Defender